**No. 24-11270**

─────────

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

─────────

CARMEN LAMONACO,

*Plaintiff-Appellee,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellant.*

─────────

On Appeal from the United States District Court
for the Middle District of Florida,
Case No. 6:23-cv-1326-PGB-LHP

─────────

**OPENING BRIEF FOR DEFENDANT-APPELLANT
EXPERIAN INFORMATION SOLUTIONS, INC.**

─────────

Yaakov M. Roth
Jeffrey R. Johnson
Brett J. Wierenga
Emily M. Hall
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939
yroth@jonesday.com

*Counsel for Appellant Experian
Information Solutions, Inc.*

No. 24-11270
*Lamonaco v. Experian Information Solutions, Inc.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, .1-2, and .1-3, Defendant-Appellant Experian Information Solutions, Inc. (Experian) provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

1. Byron, Hon. Paul G. – United States District Judge for the Middle District of Florida.

2. Central Source, LLC – U.S.-based subsidiary of Experian plc that is not wholly owned.

3. Dubbeld, Jon Paul – Counsel for Appellee.

4. Experian Holdings, Inc. – Parent company of Appellant Experian Information Solutions, Inc.

5. Experian Information Solutions, Inc. – Appellant. Experian Information Solutions, Inc. is a wholly owned subsidiary of Experian Holdings, Inc., and the ultimate parent company is Experian plc.

No. 24-11270
*Lamonaco v. Experian Information Solutions, Inc.*

6. Experian plc (EXPN:LON) – Indirect parent company of Experian Holdings, Inc., and ultimate parent company of Experian Information Solutions, Inc.

7. Hall, Emily – Counsel for Appellant.

8. Isringhaus, Jordan Tyler – Counsel for Appellee.

9. Johnson, Jeffrey – Counsel for Appellant.

10. Jones Day – Counsel for Appellant.

11. Kasowitz Benson Torres & Friedman, LLP – Counsel for Appellant.

12. Lamonaco, Carmen Clavell – Appellee.

13. McEleney, Sean Edward – Counsel for Appellee.

14. New Management Services LLC – U.S.-based subsidiary of Experian plc that is not wholly owned.

15. Online Data Exchange LLC – U.S.-based subsidiary of Experian plc that is not wholly owned.

16. Opt-Out Services, LLC – U.S.-based subsidiary of Experian plc that is not wholly owned.

17. Price, Hon. Leslie Hoffman – United States Magistrate Judge for the Middle District of Florida.

18. Roth, Jacob (Yaakov) M. – Counsel for Appellant.

19. Ruiz, Maria Helena – Counsel for Appellant.

20. Swift, Aaron M. – Counsel for Appellee.

21. Swift Law, PLLC – Counsel for Appellee.

22. United Auto Credit Corporation ("UACC") – Additional defendant in the district court. According to UACC's disclosure in the district court, UACC is a wholly-owned subsidiary of Vroom, Inc.

23. VantageScore Solutions LLC – U.S.-based subsidiary of Experian plc that is not wholly owned.

24. Vroom, Inc. (VRM) – Parent company of additional district court defendant UACC. Vroom, Inc. is a Delaware corporation that is publicly traded on the NASDAQ exchange.

25. Wierenga, Brett – Counsel for Appellant.

No other persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellant respectfully requests oral argument.  This case presents important questions regarding the Federal Arbitration Act, and oral argument may facilitate the Court's resolution of this appeal.

## <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
      DISCLOSURE STATEMENT ................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

TABLE OF CITATIONS ....................................................... iv

INTRODUCTION ........................................................... 1

STATEMENT OF JURISDICTION ............................................... 3

STATEMENT OF THE ISSUES ................................................. 4

STATEMENT OF THE CASE ................................................... 4

    A.    Factual Background. ....................................... 4

    B.    Procedural History. ....................................... 6

STANDARD OF REVIEW ..................................................... 9

SUMMARY OF ARGUMENT .................................................... 9

ARGUMENT ............................................................. 12

I.    EXPERIAN PROVED FORMATION OF THE ARBITRATION AGREEMENT. ....... 12

    A.    Experian Presented Sufficient and Undisputed Evidence
      of the Parties' Arbitration Agreement. ....................... 13

    B.    The District Court Erred by Inventing Special Heightened
      Requirements Under Rule 56. .................................. 18

II.    THE DISTRICT COURT ERRED AGAIN IN DETERMINING THAT
EXPERIAN WAIVED ITS ARBITRATION RIGHTS. ............................. 27

    A.    Experian and Lamonaco Agreed to Delegate the Waiver
      Issue to the Arbitrator. ..................................... 28

    B.    In Any Event, Experian Did Not Waive Its Right To
      Arbitrate. ................................................... 33

        1.    *Federal law governs the waiver issue* ................. 35

        2.    *Experian did not act inconsistently with arbitration* ... 36

ii

## <u>TABLE OF CONTENTS</u>
(continued)

**Page**

CONCLUSION ........................................................................42

CERTIFICATE OF COMPLIANCE ...............................................43

CERTIFICATE OF SERVICE ......................................................44

# TABLE OF CITATIONS

**Page(s)**

**CASES**

*Abu-Eid v. Discover Prod., Inc.,*
589 F. Supp. 3d 555 (E.D. Va. 2022) ............................................22

*Adams v. Lashify, Inc.,*
689 F. Supp. 3d 1146 (M.D. Fla. 2023) ........................................18

*Alvarez v. Experian Info. Sols., Inc.,*
2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023) ..............................17

*Anderson v. Angie's List, Inc.,*
2023 WL 2933263 (N.D. Ga. Apr. 13, 2023)................................18

*Attix v. Carrington Mortgage Servs., LLC,*
35 F.4th 1284 (11th Cir. 2022)...............................................29, 30

*Baker v. Experian Info. Sols., Inc.,*
No. 24-cv-00605, D.E. 23 (S.D. Ind. June 20, 2024) ....................21

*Baker v. Upson Reg'l Med. Ctr.,*
94 F.4th 1312 (11th Cir. 2024) (per curiam) ...............................13

*Barras v. Branch Banking & Tr. Co.,*
685 F.3d 1269 (11th Cir. 2012).....................................................32

*Bazemore v. Jefferson Capital Systems, LLC,*
827 F.3d 1325 (11th Cir. 2016).................................22, 23, 26, 27

*Bedgood v. Wyndham Vacation Resorts, Inc.,*
88 F.4th 1355 (11th Cir. 2023).............................................34, 36

*Branch Banking & Tr. Co. v. S & S Dev., Inc.,*
2014 WL 2215703 (M.D. Fla. May 28, 2014)...............................21

*Burch v. P.J. Cheese, Inc.,*
861 F.3d 1338 (11th Cir. 2017)...............................................13, 26

iv

*Buruk v. Experian Info. Sols., Inc.*,
  2024 WL 2025747 (D. Mass. May 6, 2024) ....................................16

*Calderon v. Sixt Rent a Car, LLC*,
  2021 WL 1325868 (S.D. Fla. Apr. 9, 2021) .............................18, 23

*Capps v. JPMorgan Chase Bank, N.A.*,
  2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) ...............................17

*Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc.*,
  2017 WL 4898292 (S.D. Fla. Oct. 27, 2017) ...............................21

*CEFCO v. Odom*,
  278 So. 3d 347 (Fla. Dist. Ct. App. 2019) .............................15, 24

*Chong v. Bank of Am., N.A.*,
  2022 WL 16832742 (D. Haw. Nov. 8, 2022) ...............................17

*Cimillo v. Experian Info. Sols., Inc.*,
  2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023) ...............................17

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) (per curiam) .....................................33

*Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Loc. 812*,
  242 F.3d 52 (2d Cir. 2001) ..........................................37

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ..................................................3

*Costa v. Experian Info. Sols. Inc.*,
  2023 WL 5434683 (M.D. Fla. Aug. 8, 2023) ...............................16

*Coulter v. Experian Info. Sols., Inc.*,
  2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ...............................17

*Creason v. Experian Info. Sols., Inc.*,
  2024 WL 1221183 (W.D. Ky. Mar. 21, 2024) ...........................17, 31

*Dasher v. RBC Bank (USA)*,
   882 F.3d 1017 (11th Cir. 2018) ................................................................9, 22

*Davis v. White*,
   795 F. App'x 764 (11th Cir. 2020) (per curiam) ...........................................40

*Derriman v. Mizzen & Main LLC*,
   2023 WL 9022723 (M.D. Fla. Dec. 29, 2023) .................................................18

*DeVries v. Experian Info. Sols., Inc.*,
   2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ....................................................17

*Doe v. Princess Cruise Lines, Ltd.*,
   657 F.3d 1204 (11th Cir. 2011) .......................................................................32

*Duke v. Nationstar Mortg., LLC*,
   893 F. Supp. 2d 1238 (N.D. Ala. 2012) ..........................................................21

*E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*,
   551 F.2d 1026 (5th Cir. 1977) .........................................................................41

*Edmundson v. Klarna, Inc.*,
   85 F.4th 695 (2d Cir. 2023) .............................................................................18

*Enright v. Experian Info. Sols., Inc.*,
   1:23-cv-01230, D.E. 28 (E.D. Va. Jan. 26, 2024) ...........................................17

*Espinosa v. Experian Info. Sols., Inc.*,
   1:23-cv-01444, D.E. 20 (E.D. Va. Jan. 26, 2024) ...........................................17

*Evans v. Experian Info. Sols., Inc.*,
   2023 WL 4714078 (C.D. Cal. July 21, 2023) ..................................................17

*Evitt v. Experian*,
   2024 WL 1513614 (E.D. Wash. April 8, 2024) ...............................................17

*Ferrell v. AppFolio, Inc.*,
   2024 WL 158103 (C.D. Cal. Jan. 11, 2024).....................................................17

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995).........................................................................................30

*Fox v. Experian Info. Sols., Inc.*,
    2024 WL 755804 (E.D. Cal. Feb. 23, 2024) ....................................................17

*Garcia v. Wachovia Corp.*,
    699 F.3d 1273 (11th Cir. 2012) .....................................................34, 39, 41, 42

*Gary Topolewski v. Experian Data Corp.*,
    2024 WL 337173 (C.D. Cal. Jan. 26, 2024) .................................................17

*Gen. Guaranty Ins. Co. v. New Orleans Gen. Agency, Inc.*,
    427 F.2d 924 (5th Cir. 1970) ...............................................................39

*George v. Experian Info. Sols., Inc.*,
    No. 23-cv-02303, D.E. 60 (D. Md. June 14, 2024) ........................................16

*Gordon v. Experian Info. Sols., Inc.*,
    1:23-cv-01290, D.E. 32 (E.D. Va. Jan. 26, 2024) ..........................................17

*Grigsby & Assocs., Inc. v. M Secs. Inv.*,
    664 F.3d 1350 (11th Cir. 2011) (per curiam)...........................................29, 31

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018) .....................................................9, 36

*Harvey v. Walmart, Inc.*,
    2024 WL 1460314 (11th Cir. Apr. 4, 2024) (per curiam)...........................19

*Hearn v. Comcast Cable Commc'ns, LLC*,
    992 F.3d 1209 (11th Cir. 2021) .............................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)...............................................................27, 33

*Hiotakis v. Nw. Fed. Credit Union*,
    2023 WL 8544081 (M.D. Fla. Dec. 11, 2023) .........................................16

*Hopgood v. Experian Info. Sols., Inc.*,
    2024 WL 629861 (C.D. Cal. Feb. 13, 2024) ...........................................17

*Hough v. Regions Fin. Corp.*,
    672 F.3d 1224 (11th Cir. 2012) (per curiam)...........................................32

*In re Apex Exp. Corp.,*
190 F.3d 624 (4th Cir. 1999) ..................................................................21

*In re StockX Customer Data Sec. Breach Litig.,*
19 F.4th 873 (6th Cir. 2021) .................................................................18

*Johnson v. Experian Info. Sols., Inc.,*
No. 1:22-cv-00477 (E.D. Va. Sept. 16, 2022) .................................17

*Johnson v. KeyBank Nat'l Ass'n,*
754 F.3d 1290 (11th Cir. 2014) .........................................................32

*Johnson v. Sw. Recovery Servs., Inc.,*
2023 WL 1879999 (N.D. Tex. Feb. 10, 2023) .................................17

*Kinkle v. Experian Info. Sols., Inc.,*
2023 WL 4105804 (S.D. Ind. June 21, 2023) .................................17

*Kisciras v. Experian Info. Sols., Inc.,*
2024 WL 1713704 (D.N.J. Apr. 22, 2024) .......................................16

*Knott v. Equifax Info. Servs., LLC,*
2023 WL 6940289 (N.D. Ga. Sept. 7, 2023) ...................................16

*Krinsk v. SunTrust Banks, Inc.,*
654 F.3d 1194 (11th Cir. 2011) ...................................................40, 41

*Larsen v. Citibank FSB,*
871 F.3d 1295 (11th Cir. 2017) .........................................................13

*Levy v. Credit Plus, Inc.,*
2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023) .................................17

*Mark Topolewski v. Experian Data Corp.,*
2024 WL 414968 (C.D. Cal. Feb. 2, 2024) .....................................17

*Mason v. Midland Funding LLC,*
815 F. App'x 320 (11th Cir. 2020) (per curiam) ......................20, 23

*Mclees v. Experian Info. Sols., Inc,*
2024 WL 135940 (C.D. Cal. Jan. 11, 2024) ...................................17

*Meeks v. Experian Info. Sols., Inc.*,
    2022 WL 17958634 (9th Cir. Dec. 27, 2022) ...................................................16

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ..........................................................................18

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)...............................................................................34, 35

*Myers v. Experian Info. Sols. Inc.*,
    2024 WL 2278398 (D. Ariz. May 20, 2024) ...................................................16

*New Prime Inc. v. Oliveira*,
    586 U.S. 105 (2019).......................................................................................32

*Oestreicher v. Equifax Info. Servs.*,
    LLC, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024) ......................................17

*Payne v. Savannah Coll. of Art & Design, Inc.*,
    81 F.4th 1187 (11th Cir. 2023)....................................................................36

*Pecoraro v. Synovus Bank*,
    2024 WL 167391 (S.D. Fla. Jan. 16, 2024) ...................................................16

*Pinnacle Constructors Grp. LLC v. SSC Tuscaloosa Apartments LLC*,
    2024 WL 3042536 (11th Cir. June 18, 2024) (per curiam).....................36, 39

*Pipoly v. Experian Info. Sols., Inc.*,
    2023 WL 5184188 (N.D. Ga. Aug. 2, 2023) ...................................................16

*Plaintiffs' Shareholders Corp. v. S. Farm Bureau Life Ins. Co.*,
    486 F. App'x 786 (11th Cir. 2012) (per curiam) ...............................29, 30, 31

*PNC Bank, N.A. v. Presbyterian Ret. Corp.*,
    2015 WL 1931395 (S.D. Ala. Apr. 28, 2015)................................................38

*Powis Parker, Inc. v. Truist Bank*,
    2024 WL 945365 (M.D. Fla. Mar. 5, 2024).................................................21

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)........................................................................................29

ix

*Roberson v. Experian Info. Sols., Inc.*,
　2022 WL 62270 (W.D. Tex. Jan. 5, 2022) ........................................................17

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*,
　906 F.2d 1507 (11th Cir. 1990) ........................................................28, 34, 35, 39

*Salazar v. Experian Info. Sols., Inc.*,
　2023 WL 3529635 (W.D. Mo. May 15, 2023) ................................................17

*Saucedo v. Experian Info. Sols., Inc.*,
　2023 WL 4708015 (E.D. Cal. July 24, 2023) ...................................................17

*Sauer v. Experian Experian Info. Sols., Inc.*,
　2022 WL 2163016 (C.D. Cal. May 12, 2022) ..................................................17

*Sherrard v. Macy's Sys. & Tech., Inc.*,
　724 F. App'x 736 (11th Cir. 2018) (per curiam) ...............................28, 37, 38

*Solis v. Am. Express Nat'l Bank*,
　2023 WL 4831307 (M.D. Fla. July 28, 2023) ..................................................16

*Solis v. Experian Info. Sols., Inc.*,
　629 F. Supp. 3d 1016 (C.D. Cal. 2022) ............................................................17

*Stephens v. Experian Info. Sols., Inc.*,
　614 F. Supp. 3d 735 (D. Haw. 2022) ................................................................17

*Steve Owren, Inc. v. Connolly*,
　877 So. 2d 918 (Fla. Dist. Ct. App. 2004) .........................................15, 24, 25

*Stone v. E.F. Hutton & Co.*,
　898 F.2d 1542 (11th Cir. 1990) (per curiam) ..................................................41

*Sw. Airlines Co. v. Saxon*,
　596 U.S. 450 (2022) ...........................................................................................33

*Tadic v. Experian Info. Sols., Inc.*,
　2019 WL 11499103 (N.D. Ga. Mar. 13, 2019) ...............................................16

*Thyssen, Inc. v. Calypso Shipping Corp.*,
　310 F.3d 102 (2d Cir. 2002) ..............................................................................38

*Tompkins v. 23andMe, Inc.,*
    840 F.3d 1016 (9th Cir. 2016) ...........................................................................18

*Valiente v. StockX, Inc.,*
    645 F. Supp. 3d 1331 (S.D. Fla. 2022) ..........................................................18

*Warrington v. Rocky Patel Premium Cigars, Inc.,*
    2023 WL 1818920 (11th Cir. Feb. 8, 2023) (per curiam) .................36, 39, 40

*Williams* v. *Experian Info. Sols., Inc.,*
    2023 WL 8373530 (M.D. Fla. Dec. 4, 2023) ...................................................16

*Yates v. Experian Info. Sols., Inc.,*
    2023 WL 4747386 (S.D. Tex. July 25, 2023) ..................................................17

**STATUTES**

9 U.S.C. § 4 ..............................................................................................9, 13, 26

9 U.S.C. § 16 ......................................................................................................3

28 U.S.C. § 1331 ..................................................................................................3

Fair Credit Reporting Act (FCRA),
    15 U.S.C. § 1681 *et seq.* ....................................................................................3

**RULES**

Fed. R. Civ. P. 15 ..............................................................................................38

Fed. R. Civ. P. 26 ...........................................................................12, 37, 38, 39

Fed. R. Civ. P. 56 .......................................................................................*passim*

**OTHER**

1 McCormick on Evid. § 10 ...............................................................................19

## INTRODUCTION

Carmen Lamonaco has never contested that she signed up for a credit-monitoring service online, and in doing so consented to its Terms of Use. Nor has she ever denied that those Terms of Use require her to arbitrate disputes with Experian Information Solutions, Inc. (Experian), including any threshold disputes over arbitrability. The district court nonetheless denied Experian's motion to compel arbitration. It held that Experian had provided insufficient evidence that the parties formed an arbitration agreement, and that Experian waived its right to arbitrate by participating in the litigation. Neither ground has any basis in precedent or common sense.

As to contract formation, Experian proved it the way e-commerce companies always do: through a declaration from a corporate officer who relied on the corporation's business records and on knowledge derived from his employment. The officer provided screenshots showing how the website and Terms of Use appeared to Lamonaco when she created her account, and described the detailed personal information Lamonaco provided when she did. This more than sufficed to carry Experian's burden. Courts across the country have compelled arbitration on materially identical facts—indeed, on the same agreement, same webpage, and same declaration.

1

Despite this uncontroverted evidence, the district court held that no reasonable jury could find that a contract existed and therefore refused to compel arbitration.  The court fretted that Experian's supporting declaration did not contain enough details about the underlying corporate records upon which the officer relied, but neither Rule 56 nor any precedent supports that hypertechnical approach.  It is especially inappropriate in a case like this one, where Lamonaco never disputed the facts (or even sought discovery).

As to waiver, the district court held that Experian gave up any right to arbitrate by participating in the litigation.  The court should never even have reached that issue, since the parties' agreement *expressly* delegates waiver disputes to the arbitrator, as this Court has recognized parties may do.  In any event, on the merits of the waiver question, the district court erred again. It disregarded this Court's binding precedent and invoked state law to find that Experian waived arbitration merely because it had filed an answer and participated in a case management conference before moving to compel arbitration just three months into the case.  But this Court has been clear that federal law controls the waiver determination, and none of the hallmarks of waiver under federal law was present here.  Indeed, federal courts uniformly reject waiver claims on records like this.

2

In short, the district court denied the existence of the parties' contract and then overrode its plain terms, usurping the arbitrator's authority under that contract to decide "all issues" including the merits, arbitrability, and waiver. The court's doubly unfounded ruling smacks of the kind of judicial hostility to arbitration that the Federal Arbitration Act (FAA) was enacted to combat. This Court should reverse, so the parties may proceed to litigate their dispute in the arbitral forum they selected.

## STATEMENT OF JURISDICTION

Lamonaco filed suit under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, conferring federal-question jurisdiction on the district court under 28 U.S.C. § 1331. The district court denied Experian's motion to compel arbitration on April 19, 2024. Doc. 34 (Order) at 26. Experian timely noticed its appeal on April 24, 2024. Doc. 35.

This Court has jurisdiction over this interlocutory appeal under the FAA. *See* 9 U.S.C. § 16(a)(1); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 739 (2023) ("Section 16(a) authorizes an interlocutory appeal from the denial of a motion to compel arbitration.").

## STATEMENT OF THE ISSUES

1.      Did the district court err when it found insufficient evidence of the parties' formation of an arbitration agreement?

2.      Did the district court err when it held, based on state law, that Experian had waived its right to arbitrate the parties' dispute?

## STATEMENT OF THE CASE

### A.    Factual Background.

CreditWorks is an online credit-monitoring service provided by Experian Consumer Services (ECS), also known as ConsumerInfo.com. Doc. 27-1 (Williams Decl.) at 1. ECS and Appellant Experian are owned by a common parent. *Id.* Experian provides data that CreditWorks needs to function, such as "how information appears in [users'] credit files." *Id.* at 5.

Lamonaco enrolled in a paid version of CreditWorks on February 16, 2020. *Id.* at 2. To enroll, a consumer must create an account by completing two webforms. The first contains personal information, including full name, address, phone number, email address, social security number, and date of birth, plus a credit card to pay for the service. *Id.* at 2-3, Ex. 1, Ex. 2. The second webform states that the consumer's credit card will be charged $1 for a 7-day trial membership, and $29.99 monthly after that. *Id.* at 2.

4

On the second webform, the consumer cannot complete the account-creation process without clicking a button entitled "Submit Secure Order." *Id.* Above that button, the webform states, "**By clicking 'Submit Secure Order": I accept and agree to your** Terms of Use Agreement**, as well as acknowledge receipt of your** Privacy Policy **and** Ad Targeting Policy**."** The words "Terms of Use Agreement" appear in blue text to indicate a hyperlink; clicking on that hyperlink displays the Terms of Use. *Id.* at 3, Ex. 2, Ex. 3.

The Terms of Use in force at the time Lamonaco created her account provided: "ECS and you agree to arbitrate all disputes and claims between us arising out of or relating to this Agreement to the maximum extent permitted by law." *Id.* at 3, Ex. 3. The arbitration agreement defined "ECS" to include ECS's "affiliates," like Experian. *Id.* The terms also provided that "[e]ach time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." *Id.* at 3, Ex. 3.

Lamonaco continuously used CreditWorks after enrolling. Doc. 27-1 (Williams Decl.) at 3. In May 2020, she downgraded to a free version of the product, but the same Terms of Use govern both versions. *Id.* at 3 n.1.

5

Under the agreement in force at the time Lamonaco sued Experian, "[a]ll issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, [and] (iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate . . . . Pursuant to this agreement, the arbitrator has been delegated with, and possesses, exclusive authority to resolve all of the above-enumerated types of disputes." *Id.*, Ex. 4 at 39.

## B.    Procedural History.

Despite the arbitration agreement, Lamonaco sued Experian (along with another party) in federal court on July 14, 2023. Doc. 1. She alleged that Experian violated the FCRA by failing to follow reasonable procedures to ensure the accuracy of her credit reports and failing to conduct reasonable investigations in response to her disputes. *Id.* at ¶¶ 57, 65.

On August 9, 2023, Experian answered Lamonaco's complaint. Doc. 11. On September 18, 2023, the parties submitted a standard joint case management report (Doc. 19), which the district court largely adopted in its scheduling order (Doc. 20). Under the order, "initial disclosures" were not due until October 20, 2023. *Id.* at 1. Motions to amend the complaint or the

answer could be filed until November 24, 2023. *Id.* The scheduling order contemplated that discovery would run more than a year, until November 2024, and that trial was nearly two years away, in July 2025. *Id.* at 1-3.

On October 24, 2023, just three months into the litigation, Experian moved to compel arbitration. Doc. 27. By that date, Lamonaco had served her first set of interrogatories (*see* Doc. 28 (Opp. to Mot. to Compel) at 6), but neither party had produced any documents, responded to any written discovery, taken any depositions, or filed any substantive motions.

To prove the arbitration agreement, Experian attached a declaration from David Williams and four related exhibits. Doc. 27-1. Williams is the Vice President of Business Governance for ECS. He declared that his duties require him to "be familiar with … the marketing, advertising and sales of [ECS] consumer credit products, including services that consumer enroll in at Experian websites, how they enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." *Id.* at 1. He affirmed that his statements were based on his "own personal knowledge" acquired "in the course and scope of [his] job responsibilities and through the review of pertinent documents maintained as business records," and that he would testify to the same "if called upon to do so." *Id.*

7

Williams attested that Lamonaco had enrolled in CreditWorks, and he set forth the steps (described above) that Lamonaco would necessarily have completed to enroll based on the way the website operates. *Id.* at 2-3. He also explained the relevant content of the Terms of Use regarding arbitration, and identified the relationship between Experian and ECS. *Id.* at 1, 4. The declaration attached screenshots of how the enrollment pages looked on February 16, 2020 (the day Lamonaco enrolled in CreditWorks), and the text of the Terms of Use as they stood both at the time she enrolled and at the time she filed this suit. *Id.* at Ex. 1, Ex. 2, Ex. 3, Ex. 4.

Lamonaco opposed Experian's motion to compel. Doc. 28. She did not deny any of Williams's statements—that she created a CreditWorks account; that she entered detailed personal information in the course of creating her account; that the creation process bound her to the Terms of Use, including an arbitration provision, to which she agreed; and that she paid for several months of CreditWorks before opting to switch to the free version. Rather, Lamonaco argued that Williams's uncontradicted declaration somehow still failed to provide sufficient evidence of the parties' arbitration agreement and that, in any case, Experian had waived its right to arbitrate by participating in Lamonaco's case in federal court for a few initial months.

8

The district court denied Experian's motion.  It found that Williams's declaration did not provide sufficient evidence of formation, and it declined even to set the issue of arbitrability for trial under 9 U.S.C. § 4.  Doc. 34 (Order) at 8-14.  The court also held that it, rather than the arbitrator, was empowered to decide the question of waiver, and concluded that Experian had waived arbitration by participating in the litigation.  *Id.* at 14-25.

## STANDARD OF REVIEW

This Court reviews *de novo* the denial of a motion to compel arbitration, including when it is based on a determination that the parties did not form an agreement to arbitrate or that the party asserting the right to arbitrate waived that right by participating in the litigation.  *See Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1021 (11th Cir. 2018) (formation); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018) (waiver).

## SUMMARY OF ARGUMENT

This should have been a straightforward case for arbitration.  Dozens of courts across the country have relied on materially indistinguishable evidentiary records to compel arbitration involving parties who enrolled in CreditWorks and thereby agreed to the Terms of Use and the arbitration agreement within it.  *See infra* n.1.

9

The district court's reasons for departing from that well-trodden path—the supposed facial insufficiency of Williams's routine declaration, and Experian's purported waiver of its right to enforce arbitration—cannot withstand scrutiny.  In both respects, the district court's outlier ruling flouts established law and would throw a wrench into ordinary litigation arising from everyday e-commerce.

I.    When a party seeks to compel arbitration based on a contract, courts apply a summary judgment-like standard derived from Federal Rule of Civil Procedure 56.  Under that familiar standard, the moving party must support its motion with sufficient evidence to compel a verdict in its favor; the non-moving party then has the opportunity to present contrary evidence to identify a dispute of material fact.

Williams's declaration easily cleared the bar, and Lamonaco failed to dispute any material facts.  Based on personal knowledge gained through his position as an ECS officer and review of the relevant business records, Williams explained in detail when and how Lamonaco had signed up for CreditWorks and what she necessarily saw and did in doing so.  Courts regularly compel arbitration based on materially identical declarations, in the ECS context and beyond.  And Lamonaco disputed none of this.

10

The district court objected that Williams did not describe ECS's records in detail or identify every record he reviewed, but there is no requirement to do so—especially for corporate officers, who are presumed to be familiar with corporate records, and especially where the facts are uncontradicted.

The cases on which the district court relied are plainly distinguishable. There, declarants admitted they *did not* have any evidence of whether an arbitration agreement had been entered or even what the agreement said; the declarants could only *speculate* about what *might* have happened. That bears no resemblance to Williams's testimony. The district court's analogy to cases admitting a lack of personal knowledge was error.

**II.** Parties may delegate "threshold questions of arbitrability" to an arbitrator, so long as they do so "clearly and unmistakably." Whether a party has waived its right to arbitrate is one of those threshold questions. And, here, Lamonaco and Experian expressly agreed that "[a]ll issues are for the arbitrator to decide including … whether [Lamonaco or Experian], through litigation conduct or otherwise, waived the right to arbitrate." Doc. 27-1 (Williams Decl.), Ex. 4 at 39. The district court therefore lacked authority to decide the waiver dispute, and should have granted Experian's motion to allow the arbitrator to resolve it in the first instance.

In any event, Experian did not waive its right to arbitration.  Contrary to the district court, waiver presents a question of *federal* law under this Court's precedents.  And, under that federal test, it is clear that Experian's actions—filing an initial answer and participating in a Rule 26(f) conference—did not amount to knowing abandonment of its right to arbitrate.  Indeed, neither this Court nor any other federal Court of Appeals has ever found that such minimal participation in litigation is sufficient to establish waiver.

## ARGUMENT

### I.    EXPERIAN PROVED FORMATION OF THE ARBITRATION AGREEMENT.

The district court denied Experian's motion to compel principally because of dissatisfaction with the amount of detail Williams's declaration provided regarding ECS's customer-enrollment records.  But the evidence Williams presented on the CreditWorks sign-up process and Lamonaco's enrollment, based on his decades of employment and review of company records, was more than sufficient to allow a jury to conclude that Lamonaco had assented to arbitration—especially when Lamonaco disputed none of it.  This Court should reverse the district court's outlier decision, which both deviates from well-established law and erects new, pointless hurdles to routine civil motions practice.

12

### A.    Experian Presented Sufficient and Undisputed Evidence of the Parties' Arbitration Agreement.

Congress enacted the FAA "to overcome judicial resistance to arbitration," instead instituting a "liberal federal policy favoring arbitration agreements." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). The question whether the parties agreed to arbitrate is "simply a matter of contract," *id.*, governed in this case by Florida law (Doc. 34 (Order) at 19).

A party seeking to compel arbitration must often present evidence beyond the pleadings, which is assessed using a "summary judgment-like standard" derived from Rule 56. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021). Under that rule, a moving party that bears the burden of proof must "support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (per curiam). Then, to avoid summary judgment, the non-moving party must present "significant, probative evidence demonstrating the existence of a triable issues of fact." *Id.* If genuine factual disputes exist, the court does not *deny* arbitration—instead, it must "proceed summarily" to a trial on arbitrability. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017); 9 U.S.C. § 4.

13

Experian easily carried its burden here.  In a sworn declaration, Williams explained that, to create a CreditWorks account, a consumer must provide detailed personal information, including name, address, social security number, and date of birth. Doc. 27-1 (Williams Decl.) at 2.  The person must then click a "Submit Secure Order" button, which is preceded by a disclosure, in bold, stating that clicking constitutes binding agreement to hyperlinked Terms of Use, including an arbitration agreement between the accountholder, ECS, and ECS's affiliates.  *Id.*

Williams attested that, on February 16, 2020, Lamonaco opened a CreditWorks account by inputting her information and "continually used the service" thereafter.  *Id.* at 2-3.  In May 2020, after a few months of paying for the service, Lamonaco "downgraded" the account from the paid version, but maintained the free version governed by the same Terms of Use.  *Id.* at 3 n.1.  Williams explained that his knowledge of Lamonaco's interaction with ECS's website stemmed from his 23 years of employment at ECS, during which he developed familiarity with "services that consumer enroll in at Experian websites, how they enroll, the forms they must complete to enroll"—and his review of ECS business records, including "membership enrollment data" that ECS maintains in the usual course.  *Id.* at 1.

14

In response, Lamonaco did not deny she signed up for CreditWorks or that the sign-up process was exactly as Williams described. That is so even though she is obviously in the best position to disavow creating and paying for the account (if she truly did not) and even though that is typically what consumers do when they contest entering an arbitration agreement. *E.g.*, *CEFCO v. Odom*, 278 So. 3d 347, 349-50 (Fla. Dist. Ct. App. 2019) (consumer "attest[ed] that… she never entered into the Agreement or agreed to its terms"); *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 919 (Fla. Dist. Ct. App. 2004) (party "testified unequivocally that she never signed the employment agreement with the arbitration provision").

On this record, there was simply no genuine dispute of material fact as to contract formation. Williams's undisputed testimony established that Lamonaco opened a CreditWorks account using her personal information, clicking "Submit Secure Order" directly adjacent to the text informing her of the contractual consequences of doing so. Lamonaco, in turn, does not deny creating and paying for the account or any of the details of her enrollment. No reasonable jury could resist the conclusion that Lamonaco opened the account and, in doing so, agreed to the Terms of Use.

Courts around the country routinely compel arbitration on materially identical records. Indeed, dozens have done so in Experian cases just like this one, including within this Circuit, and including *after* the decision below. *See*, *e.g.*, *Pecoraro v. Synovus Bank*, 2024 WL 167391, at *1 (S.D. Fla. Jan. 16, 2024) ("The Williams Affidavit is competent evidence to show that Plaintiff accepted the Terms of Service Agreements—and the relevant arbitration clause—that were in effect when he enrolled in CreditWorks."); *Knott v. Equifax Info. Servs., LLC*, 2023 WL 6940289, at *2 (N.D. Ga. Sept. 7, 2023) ("Defendant has affirmatively shown, via the declaration of Vice President David Williams and the attached exhibits, that Plaintiff accepted and agreed to the Terms of Use Agreement."), *R&R adopted*, 2023 WL 8824669.[1]

---

[1] For other recent cases within the Eleventh Circuit, *see, e.g.*, *Hiotakis v. Nw. Fed. Credit Union*, 2023 WL 8544081 (M.D. Fla. Dec. 11, 2023); *Williams* v. *Experian Info. Sols., Inc.*, 2023 WL 8373530 (M.D. Fla. Dec. 4, 2023); *Costa v. Experian Info. Sols. Inc.*, 2023 WL 5434683 (M.D. Fla. Aug. 8, 2023), *R&R adopted,* 2023 WL 5432296; *Pipoly v. Experian Info. Sols., Inc.*, 2023 WL 5184188 (N.D. Ga. Aug. 2, 2023), *R&R adopted,* 2023 WL 5438171; *Solis v. Am. Express Nat'l Bank*, 2023 WL 4831307 (M.D. Fla. July 28, 2023); *Tadic v. Experian Info. Sols., Inc.*, 2019 WL 11499103 (N.D. Ga. Mar. 13, 2019).

For examples outside the Eleventh Circuit, *see*, *e.g.*, *Meeks v. Experian Info. Sols., Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022); *George v. Experian Info. Sols., Inc.*, No. 23-cv-02303, D.E. 60 (D. Md. June 14, 2024); *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398 (D. Ariz. May 20, 2024); *Buruk v. Experian Info. Sols., Inc.*, 2024 WL 2025747 (D. Mass. May 6, 2024); *Kisciras v.*

These circumstances are not particular to Experian; courts regularly

compel arbitration on similar facts in other cases involving contracts formed

_____

*Experian Info. Sols., Inc.*, 2024 WL 1713704 (D.N.J. Apr. 22, 2024); *Evitt v. Experian*, 2024 WL 1513614 (E.D. Wash. April 8, 2024); *Creason v. Experian Info. Sols., Inc.*, 2024 WL 1221183 (W.D. Ky. Mar. 21, 2024); *Oestreicher v. Equifax Info. Servs.*, LLC, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024); *Fox v. Experian Info. Sols., Inc.*, 2024 WL 755804 (E.D. Cal. Feb. 23, 2024); *Enright v. Experian Info. Sols., Inc.*, 1:23-cv-01230, D.E. 28 (E.D. Va. Jan. 26, 2024); *Gordon v. Experian Info. Sols., Inc.*, 1:23-cv-01290, D.E. 32 (E.D. Va. Jan. 26, 2024); *Espinosa v. Experian Info. Sols., Inc.*, 1:23-cv-01444, D.E. 20 (E.D. Va. Jan. 26, 2024); *Hopgood v. Experian Info. Sols., Inc.*, 2024 WL 629861 (C.D. Cal. Feb. 13, 2024); *Mark Topolewski v. Experian Data Corp.*, 2024 WL 414968 (C.D. Cal. Feb. 2, 2024); *Gary Topolewski v. Experian Data Corp.*, 2024 WL 337173 (C.D. Cal. Jan. 26, 2024); *Ferrell v. AppFolio, Inc.*, 2024 WL 158103 (C.D. Cal. Jan. 11, 2024); *Mclees v. Experian Info. Sols., Inc*, 2024 WL 135940 (C.D. Cal. Jan. 11, 2024); *Yates v. Experian Info. Sols., Inc.*, 2023 WL 4747386 (S.D. Tex. July 25, 2023); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015 (E.D. Cal. July 24, 2023); *Evans v. Experian Info. Sols., Inc.*, 2023 WL 4714078 (C.D. Cal. July 21, 2023); *Kinkle v. Experian Info. Sols., Inc.*, 2023 WL 4105804 (S.D. Ind. June 21, 2023); *Salazar v. Experian Info. Sols., Inc.*, 2023 WL 3529635 (W.D. Mo. May 15, 2023); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023); *Levy v. Credit Plus, Inc.*, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023); *Alvarez v. Experian Info. Sols., Inc.*, 2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023); *Cimillo v. Experian Info. Sols., Inc.*, 2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023); *Johnson v. Sw. Recovery Servs., Inc.*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023); *Chong v. Bank of Am., N.A.*, 2022 WL 16832742 (D. Haw. Nov. 8, 2022); *Johnson v. Experian Info. Sols., Inc.*, No. 1:22-cv-00477 (E.D. Va. Sept. 16, 2022); *Stephens v. Experian Info. Sols., Inc.*, 614 F. Supp. 3d 735 (D. Haw. 2022); *Sauer v. Experian Experian Info. Sols., Inc.*, 2022 WL 2163016 (C.D. Cal. May 12, 2022); *Roberson v. Experian Info. Sols., Inc.*, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022); *Solis v. Experian Info. Sols., Inc*, 629 F. Supp. 3d 1016 (C.D. Cal. 2022); *Coulter v. Experian Info. Sols., Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017).

online. *See*, *e.g.*, *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 699 (2d Cir. 2023) (compelling arbitration under electronic agreement based on declaration from "senior product manager" representing that defendant "maintains records" of customer transactions and providing screenshots of website); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881-82 (6th Cir. 2021); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1020 (9th Cir. 2016); *Calderon v. Sixt Rent a Car, LLC*, 2021 WL 1325868, at *5-7 (S.D. Fla. Apr. 9, 2021); *Derriman v. Mizzen & Main LLC*, 2023 WL 9022723, at *6-7 (M.D. Fla. Dec. 29, 2023); *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1153-57 (M.D. Fla. 2023); *Anderson v. Angie's List, Inc.*, 2023 WL 2933263, at *3 (N.D. Ga. Apr. 13, 2023); *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (all similar).

### B.    The District Court Erred by Inventing Special Heightened Requirements Under Rule 56.

The district court observed that, if Lamonaco did enroll through the process Williams described, that would at least appear to "result in a binding clickwrap agreement" under Florida law.  Doc. 34 (Order) at 9.  The court also acknowledged that Lamonaco did not "expressly deny" so enrolling. *Id.* (She did not *implicitly* deny it either; she simply said nothing at all.)

Nonetheless, the court held that Williams's unrebutted testimony was not sufficient evidence under Rule 56. Although the precise basis for this holding is hard to pinpoint, the court focused mainly on Williams's reliance on ECS records, noting that he might have provided more detail or attached more documents, and claiming that his testimony amounted to mere "habit or practice" evidence. Doc. 34 (Order) at 8-14. All of that is very wrong.

1.    As an initial matter, the district court's focus on "direct, personal knowledge" could be read to suggest that Williams could not testify since he did not physically see Lamonaco sign up for ECS's service. *Id.* at 10. Of course, that would be absurd—if that were the test, no internet contract would be enforceable. In all likelihood, the only person who saw Lamonaco enroll was Lamonaco herself, and she has stayed conspicuously silent.

Even setting that aside, the burden to show personal knowledge under Rule 56(c)(4) is notoriously "minimal." 1 McCormick on Evid. § 10 (8th ed.). This Court recently reaffirmed that simply *stating* that a declaration is "based on personal knowledge" itself constitutes "sufficient evidence of personal knowledge." *Harvey v. Walmart, Inc.*, 2024 WL 1460314, at *2 (11th Cir. Apr. 4, 2024) (per curiam). Here, Williams expressly attested to his personal

19

knowledge of the date Lamonaco created her account, the information she provided to ECS, the appearance of the website, and the Terms of Use to which she assented.  Doc. 27-1 (Williams Decl.) at 2, Ex. 1, Ex. 2, Ex. 3.  That was sufficient for Rule 56.  So while the court faulted Williams for failing to attach or further describe the records ECS maintains regarding customer enrollment—such as "website access logs showing [Lamonaco's] IP address" (Doc. 34 (Order) at 10)—that demand is unmoored from the law.

Indeed, this Court rejected the *exact same* objection in the *exact same* context in *Mason v. Midland Funding LLC*, 815 F. App'x 320 (11th Cir. 2020) (per curiam).  There, the declarant asserted that a credit card agreement containing an arbitration provision had been mailed to one of the plaintiffs, and the declarant claimed those facts "fell 'within her personal knowledge' and were 'based upon her review of relevant business records.'"  *Id.* at 329.  The plaintiff argued that the declarant "did not detail the documents she reviewed nor attach any documents supporting her claim."  *Id.*  This Court was "unpersuaded"—the declarant had testified to "facts about the goings-on within the company" and "supported her basis of knowledge by asserting that she also relied on her review of her company's documents," which "checked all the boxes."  *Id.*  Nothing more was required, there or here.

20

*Mason* accords with widespread practice in this Circuit. As one court recently summarized, a "corporate officer" is "presumed to possess personal knowledge of a fact contained in the corporation's records," and "numerous courts have held" that an affidavit "is properly considered when the corporate representative expressly verifies that the matters stated therein are based on his own personal knowledge gained through review of business records." *Powis Parker, Inc. v. Truist Bank*, 2024 WL 945365, at *3-4 (M.D. Fla. Mar. 5, 2024); *see also Baker v. Experian Info. Sols., Inc.*, No. 24-cv-00605, D.E. 23 at 3-4 (S.D. Ind. June 20, 2024) (rejecting decision below; citing *Powis Parker*).[2] Other Courts of Appeals agree too. *E.g.*, *In re Apex Exp. Corp.*, 190 F.3d 624, 635 (4th Cir. 1999) (presuming knowledge of corporate officer).

---

[2] *See also Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc.*, 2017 WL 4898292, at *2 (S.D. Fla. Oct. 27, 2017) ("Cannon's declaration is admissible because it asserts the basis of his personal knowledge, namely that he is the Finance Director for the successor company and he reviewed the financial records."); *Branch Banking & Tr. Co. v. S & S Dev., Inc.*, 2014 WL 2215703, at *4 (M.D. Fla. May 28, 2014) ("Based on Nunez's representation that he is an employee of BB&T and that his affidavit is based on personal knowledge and a review of certain BB&T's business records, the Court may rely on his affidavit with regard to possession of the Note."), *aff'd*, 620 F. App'x 698 (11th Cir. 2015); *Duke v. Nationstar Mortg., LLC*, 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012) ("The Loll Declaration … states both that Mr. Loll reviewed Nationstar's records and that he has knowledge of the facts set forth in the declaration. This is sufficient to meet Rule 56(c)(4)'s personal knowledge requirement.").

The district court's demand for extra detail was particularly pointless here, in the absence of *any* conflicting evidence or even a *conclusory* denial by Lamonaco.  Nor did Lamonaco seek ECS's records in discovery, as she could have done if she had any legitimate reason to dispute that she created an account.  *E.g.*, *Dasher*, 882 F.3d at 1019 ("[T]he parties conducted limited discovery related to the issue of arbitration.").  This Court should not allow Lamonaco to weaponize her own "failure to explore [Williams's] testimony" to "preclude [Experian] from relying on [Williams's] declaration."  *Abu-Eid v. Discover Prod., Inc.*, 589 F. Supp. 3d 555, 562 (E.D. Va. 2022).

**2.**    The district court's holding to the contrary rested on three cases, each of which is plainly distinguishable.

Most prominently, the court looked to this Court's decision in *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016).  There, it was "undisputed" that the plaintiff had applied for her credit card "over the Internet."  *Id.* at 1327.  But the declarant for the defendant "did not assert that he ha[d] any personal knowledge" regarding when the plaintiff applied.  *Id.*  Even "[m]ore fundamentally," the declarant did not provide the "terms governing her account," or any "evidence concerning what, if any, clickwrap agreement appeared on plaintiff's computer screen when she applied."  *Id.*

at 1331.  Given the complete lack of evidence of any contractual terms or how they were purportedly accepted, there was "no competent evidence that she entered into any relevant arbitration agreement."  *Id.*  The declarant also attested that a contract "would have been sent" in a "Welcome Kit" to the plaintiff by mail, as part of the company's "regular and ordinary practice," but he did not claim "that he reviewed any records showing that a Welcome Kit was sent to her," or that the Welcome Kit even contained any arbitration agreement.  *Id.* at 1328, 1331.  So that too was insufficient.  *See id.*

This case is nothing like *Bazemore*.  Unlike the declarant there, Williams provided the specific website and terms presented to Lamonaco when she created her account, and those terms included an arbitration agreement.  Furthermore, Williams swore that he *did* have personal knowledge of the date on which Lamonaco created her account and that his knowledge of that particular event *was* based on a review of company records.  And Williams *did* provide documentary proof—in the form of website screenshots—that showed how Lamonaco necessarily accepted ECS's Terms of Use when she created her account.  In *Mason*, this Court found similar facts distinguishable from *Bazemore*.  *See* 815 F. App'x at 329; *see also Calderon*, 2021 WL 1325868, at *7 (distinguishing *Bazemore* on the same bases).  So too here.

23

The other cases the district court cited are even further afield.    In *CEFCO v. Odom*, the defendant claimed that the plaintiff, a former employee, agreed to arbitration as part of the hiring process.  278 So. 3d at 354.  But the declarant for the defendant "did not claim to have personal knowledge" and could speak only to the company's "ordinary practice."  *Id.*  The plaintiff, in turn, swore "she had never seen, signed, or agreed to the terms" of the contract, and explained further that the store manager had completed the onboarding process on her behalf and signed any agreements without her consent.  *Id.* at 354-55.  Here, by contrast, Williams attested that Lamonaco's information was used to create an account on a particular date through a particular website, and Lamonaco has never disputed that she entered her information into ECS's website and agreed to ECS's terms.

Finally, the district court relied on *Steve Owren, Inc. v. Connolly*, which also involved a former employee who supposedly had signed an arbitration agreement during the onboarding process.  877 So. 2d at 919.  But there too, the defendant could not produce any witness to testify "that the [plaintiff] actually signed the document in his/her presence," and the declarant for the defendant testified only that it was the "habit and practice" of the defendant to have new employees sign such an agreement.  *Id.* at 920.  The plaintiff,

24

meanwhile, "testified unequivocally that she never signed the employment agreement with the arbitration provision." *Id.* at 919. The court rejected such "habit and practice" evidence in the face of the plaintiff's denial. *Id.* Here, again by contrast, Williams swore, based on ECS records, that Lamonaco's specific information was used to sign up for CreditWorks, and Lamonaco conspicuously has never denied doing so. And unlike human employees—who might not invariably follow corporate protocols—ECS's website does not have a mere "habit" of requiring users to assent to arbitration. It is *impossible* to create an account without doing so.

In sum, the district court erred in analogizing to cases in which the declarant could not produce the terms of the parties' agreement and offered only speculative and uncertain habit-and-practice evidence, especially after the plaintiffs unequivocally denied signing arbitration agreements. Here, Williams produced the Terms of Use to which Lamonaco had to agree in order to enroll in CreditWorks; he attested to his personal knowledge of Lamonaco's enrollment and demonstrated the exact sign-up process she necessarily followed given the website design; and Lamonaco never denied any of this. On this one-sided record, no reasonable jury could decline to find that the parties entered an agreement to arbitrate.

**3.**      At minimum, the district court erred in refusing to order trial on the issue of contract formation.  *See* Doc. 34 (Order) at 13-14.  Under the FAA, "[i]f the making of the arbitration agreement… be in issue, the court *shall* proceed summarily to the trial thereof."  9 U.S.C. § 4 (emphasis added); *see Burch*, 861 F.3d at 1346 (affirming decision to proceed to trial given disputed question of material fact).  This tracks the normal progress of litigation:  If a party's motion for summary judgment fails, the case proceeds to trial.  In refusing to set a trial on the matter of arbitrability, the district court must have concluded not only that Experian failed to show that *any* reasonable jury *must* find that Lamonaco agreed to arbitration, but that *no* reasonable jury *could* find as much—in effect granting summary judgment on the issue of arbitrability to Lamonaco (who never asked for it).  That was error.

The court again rested on *Bazemore*, which held that the defendant would not be allowed to proceed to trial on arbitrability, thereby receiving a "second bite at the apple."  827 F.3d at 1333.  But this case is not *Bazemore*.  As explained above, the defendant there produced "*no competent evidence* as to what, if any, terms plaintiff agreed to when ordering her credit card," and "*no competent evidence* that a Welcome Kit containing the arbitration agreement… was mailed."  *Id.* at 1331 (emphases added).  More to the point,

26

the defendant *could not* do so: It admitted that it had "no way of knowing whether the arbitration language" actually "appeared in the form allegedly mailed." *Id.* In other words, not only had the defendant failed to produce enough evidence to *compel* a finding in its favor, but the records showed that it could not even produce enough evidence to *allow* a finding in its favor.

In this case, by contrast, Williams provided competent evidence that a jury could find Lamonaco agreed to arbitrate—and illustrated that reams of additional evidence could have been produced on that score if necessary. If there were any genuine issue remaining about Williams's knowledge or about Lamonaco's enrollment (and to be clear, there was not), proceeding to trial was not only appropriate but mandatory under the FAA.

## II. THE DISTRICT COURT ERRED AGAIN IN DETERMINING THAT EXPERIAN WAIVED ITS ARBITRATION RIGHTS.

The district court alternatively denied Experian's motion to compel on the ground that Experian waived its right to arbitrate this dispute. Doc. 34 (Order) at 14-25. At the outset, however, the district court "possesse[d] no power to decide" whether Experian waived arbitration—the parties had committed the authority to decide that issue to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

27

Even if the court were the proper forum for the waiver question, the district court's analysis was flawed.  It focused on state law, even though this Court's precedent makes clear that whether a party "waived its right to arbitration . . . is controlled solely by federal law."  *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990).  And the court found waiver based on Experian's participation in the suit "to a minor extent"— participation that falls far short of being "inconsistent with an intent to arbitrate."  *Sherrard v. Macy's Sys. & Tech., Inc.*, 724 F. App'x 736, 740 (11th Cir. 2018) (per curiam).  Indeed, no federal Court of Appeals has *ever* found waiver on facts remotely like these.  On this issue too, reversal is required.

## A.    Experian and Lamonaco Agreed to Delegate the Waiver Issue to the Arbitrator.

The Terms of Use expressly delegate to the arbitrator the authority to decide whether either party has, "through litigation conduct or otherwise, waived the right to arbitrate."  Doc. 27-1 (Williams Decl.), Ex. 4 at 39.  The district court disregarded that agreement without any legal basis.  Its determination that the court, rather than the arbitrator, should decide the waiver issue failed to enforce the parties' agreement as the FAA requires; it alone warrants reversal without the need to reach the waiver merits.

28

Under the FAA, contracting parties "can agree to arbitrate 'gateway' questions of 'arbitrability'" by "delegat[ing] resolution of" those gateway questions "to the arbitrator." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Such "gateway" or "threshold" questions address whether the dispute should proceed in court or before the arbitrator, and may include "questions about the enforceability, scope, or applicability" of the parties' arbitration agreement. *Attix v. Carrington Mortgage Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022).

Whether a party has waived the right to arbitrate by participating in litigation is one of those threshold questions of arbitrability. This Court has therefore repeatedly indicated that parties may agree to arbitrate disputes about waiver instead of litigating them. *See Grigsby & Assocs., Inc. v. M Secs. Inv.*, 664 F.3d 1350, 1352, 1354 (11th Cir. 2011) (per curiam) (questions of waiver, being disputes that "involve whether a particular claim should be resolved in court or arbitration," are "presumptively for courts to resolve" absent "some agreement to the contrary"); *Plaintiffs' Shareholders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 790 (11th Cir. 2012) (per curiam) (evaluating whether there was "clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver").

29

Accordingly, as with other threshold questions of arbitrability, a court must enforce an agreement to arbitrate a waiver dispute if there is "clear and unmistakable evidence" that the parties agreed to that delegation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Plaintiff s' Shareholders*, 486 F. App'x at 789. "[A]n express delegation clause" constitutes "clear and unmistakable evidence" of an agreement to arbitrate threshold questions of arbitrability. *Attix*, 35 F.4th at 1296-97. So when an arbitration agreement contains an express delegation clause, courts must "respect the parties' decision" and allow the arbitrator to decide the delegated questions. *Id.*

Here, the Terms of Use show that Lamonaco and Experian "clearly and unmistakably agreed" to delegate the issue of waiver by litigation conduct. *Id.* The contract provides that "all issues regarding arbitrability" are for the arbitrator to decide. Doc. 27-1 (Williams Decl.), Ex. 4 at 39. And on top of that sweeping delegation, the Terms are even more explicit on this precise question: "whether [Lamonaco or Experian], through litigation conduct or otherwise, waived the right to arbitrate" is among the "types of disputes" that "the arbitrator has been delegated with, and possesses, exclusive authority to resolve." *Id.* There is no credible basis to deny that this "express delegation clause" delegated the question of waiver to the arbitrator. *Attix*,

30

35 F.4th at 1296-97; *cf. Plaintiffs' Shareholders*, 486 F. App'x at 790 (suggesting that "references to waiver or similar terms" would be sufficiently clear). Other courts have enforced the delegation clause accordingly. *See Creason v. Experian Info. Sols., Inc.*, 2024 WL 1221183, at *4 (W.D. Ky. Mar. 21, 2024) ("Any reasonable interpretation of this language … sends the waiver question to the arbitrator."). The court here erred in disregarding it.

To justify usurping the authority to decide the waiver issue, the district court stated that "the Eleventh Circuit holds 'questions of waiver based on a party's litigation conduct are for the courts to resolve.'" Doc. 34 (Order) at 15 (quoting *Grigsby & Assocs.*, 664 F.3d at 1354). But *Grigsby* held only that "it is *presumptively* for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate." 664 F.3d at 1353 (emphasis added). And the Court went on to explain that it used "presumptively" the same way everyone else does in this context: "that is, *in the absence of some agreement to the contrary between the contracting parties*." *Id.* at 1352 (emphasis added). As just explained, the parties expressly agreed to arbitrate "whether [Lamonaco or Experian], through litigation conduct or otherwise, waived the right to arbitrate." Doc. 27-1 (Williams Decl.), Ex. 4 at 39. If that does not rebut the presumption, nothing does.

31

None of the cases cited by the district court suggests otherwise. Doc. 34 (Order) at 15-16 (citing cases). One of them did not involve an agreement to arbitrate threshold questions of arbitrability at all. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213-15 (11th Cir. 2011). And while some of them did involve agreements to delegate *certain* arbitrability questions—such as unconscionability—the agreements did not specifically delegate *waiver by litigation conduct*. *See Johnson v. KeyBank Nat'l Ass'n*, 754 F.3d 1290, 1292-93 (11th Cir. 2014); *Barras v. Branch Banking & Tr. Co.*, 685 F.3d 1269, 1274 (11th Cir. 2012); *Hough v. Regions Fin. Corp.*, 672 F.3d 1224, 1227 (11th Cir. 2012) (per curiam). The Terms of Use do. To Experian's knowledge, no court has ever rejected delegation in the face of such unambiguous language.

The district court also suggested that even a "crystal clear" delegation might not be sufficient to grant the arbitrator authority over the question of waiver by litigation conduct. Doc. 34 (Order) at 15 (citing *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019)). But *New Prime* is completely inapposite. It involved the question whether the contract was one subject to the FAA at all. 586 U.S. at 112 (holding that court may properly address the "necessarily antecedent statutory inquiry" into whether "the contract in question is within the coverage of" the FAA). Here, Lamonaco does not contest (and

32

has never contested) that the Terms of Use contract is governed by the FAA. Nor could she, given that Experian's business involves interstate commerce and the Terms of Use are not an exempted employment contract. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam); *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 459 (2022).

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 586 U.S. at 65. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* at 68. Because the district court failed to respect the parties' agreement to arbitrate the waiver issue, this Court should reverse.

## B.    In Any Event, Experian Did Not Waive Its Right To Arbitrate.

Even assuming the district court had the authority to decide the waiver question, it plainly erred in answering it. Under this Court's precedent, waiver is a question of federal law. And under the applicable federal test, Experian's limited participation in the litigation for just three months before filing a motion to compel did not affirmatively abandon its contractual right to arbitration. Neither filing an answer nor participating in a preliminary case conference comes anywhere close to effecting a waiver.

First, some legal background. Until recently, this Court used a two-part test, "controlled solely by federal law," to determine whether a party had waived its right to arbitration. *S & H Contractors*, 906 F.2d at 1514. The first step asked whether, "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012). A party does so if it "substantially invokes the litigation machinery prior to demanding arbitration." *Id.* The second step asked "whether, by acting inconsistently with the arbitration right, that party has in some way prejudiced the other party." *Id.*

In 2022, the Supreme Court considered whether that second step—demanding "a showing of prejudice," as many courts did—comported with the FAA. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416 (2022). The Court held that "prejudice is not a condition of finding that a party … waived its right to stay litigation or compel arbitration." *Id*. at 419.

*Sundance* is important both because of what it changed and what it left undisturbed. Because courts may not employ a prejudice inquiry, this Court now decides waiver based solely on the first step—whether the party acted inconsistently with the arbitration right. *See Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1369-70 (11th Cir. 2023). But *Sundance* did not

34

alter the precedential landscape as to antecedent issues, including "the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate." 596 U.S. at 416; *see also id.* ("We do not address [that] issue[].").  Indeed, the Court specifically noted that "[t]he Courts of Appeals … have generally resolved cases like this one as a matter of federal law," and "assume[d] without deciding" that courts "are right to do so." *Id.* at 416-17.  *Sundance* thus did not disturb this Court's longstanding rule that whether a party "waived its right to arbitration … is controlled solely by federal law." *S & H Contractors*, 906 F.2d at 1514.

### 1.    *Federal law governs the waiver issue.*

Below, the district court rejected this Court's holding that federal law controls and applied state law instead, reasoning that it was required to "at the very least, consult" Florida waiver law because *Sundance* directs that courts must "treat arbitration contracts like all others." Doc. 34 (Order) at 19.  That constituted plain legal error.  Again, *Sundance* "assume[d] without deciding" that courts are "right" to apply federal law under the FAA. 596 U.S. at 416-17.  So, by its very terms, nothing in *Sundance* undermined this Court's precedent that waiver "is controlled solely by federal law." *S & H Contractors*, 906 F.2d at 1514.  That precedent remains binding here.

Nor has anything in this Court's post-*Sundance* caselaw cast any doubt on that precedent. To the contrary, each of this Court's cases considering waiver by litigation conduct after *Sundance* has continued to look only to federal law. *See Bedgood*, 88 F.4th at 1369-70; *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1200-01 (11th Cir. 2023); *Pinnacle Constructors Grp. LLC v. SSC Tuscaloosa Apartments LLC*, 2024 WL 3042536, at *1-2 (11th Cir. June 18, 2024) (per curiam); *Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) (per curiam). The district court erred in departing from this Court's consistent precedent.

### 2.    *Experian did not act inconsistently with arbitration.*

The district court yet erred again in determining that Experian's minor participation in this lawsuit sufficed to waive its right to arbitration.

Post-*Sundance*, this Court asks whether, "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Bedgood*, 88 F.4th at 1369. "A key factor" in this inquiry "is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Warrington*, 2023 WL 1818920, at *2. So long as a party provides "fair notice" of its intent to arbitrate "at an early stage in litigation," there is no waiver. *Gutierrez*, 889 F.3d at 1236.

36

Under that test, there was no waiver here—not even close. Experian moved to compel arbitration only three months after Lamonaco sued. Doc. 31. At that time, the litigation was in its earliest stages—discovery had not yet commenced, the court had issued only routine scheduling orders, and no substantive motions were pending. Before moving to compel, Experian only "participated in the litigation to a minor extent"—it did not engage in "the sort of *substantial* participation that could be considered 'inconsistent with an intent to arbitrate.'" *Sherrard*, 724 F. App'x at 740.

More specifically, the only actions Experian took in the litigation prior to seeking arbitration were (i) filing an answer, and (ii) participating in the Rule 26 conference, with the required Rule 26(f) report filed thereafter. Doc. 11; Doc. 19; *see* Fed. R. Civ. P. 26(f). Those limited actions were not sufficient to waive the arbitration right. In fact, this Court has favorably cited cases holding that a party *did not* waive arbitration by engaging in those actions. *Sherrard*, for example, relied on a Second Circuit holding that "neither filing an answer nor waiting four months to seek arbitration was sufficient to constitute a waiver." 724 F. App'x at 740 (quoting *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Loc. 812*, 242 F.3d 52, 57-58 (2d Cir. 2001)). The Court also cited a ruling that where a party had "merely

participated in the parties' planning meeting, contributed to the Rule 26(f) report, filed a brief in opposition to a motion for preliminary injunction, and agreed to a consent resolution of said motion," that was "insufficient" to constitute waiver. *Id.* (quoting *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, 2015 WL 1931395, at *9, n. 14 (S.D. Ala. Apr. 28, 2015)).

The district court thought it mattered that Experian's answer made "no mention of arbitration." Doc. 34 (Order) at 20; *see also id.* at 22. But that cannot have effected a waiver, if only because the answer was still open to amendment. A party is permitted to amend its answer once as of right and the court must give leave for other amendments "when justice so requires." Fed. R. Civ. P. 15(a). Here, the court's scheduling order gave the parties until November 24, 2023 to amend the pleadings. Doc. 20. It makes no sense to say that Experian's failure to list an arbitration defense in its answer effected a waiver, when Experian *remained free to amend its answer to add that defense.* Indeed, Experian's motion was the functional equivalent of amending its answer—and came well within the court's own designated timeframe. This holding was thus a pointless "gotcha." *See Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 106-07 (2d Cir. 2002) (rejecting "*per se* rule that arbitration must be pleaded in the answer in order to avoid waiver").

38

Similarly, it would be absurd to find waiver based on Experian's mere participation in the case management conference mandated by Rule 26 and submission of the required Rule 26(f) report. "All of these actions were consistent with orderly participation in the lawsuit," and Experian thus "lost no rights by doing them." *Gen. Guaranty Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970); *see also* Fed. R. Civ. P. 26(f). Indeed, in recently reversing another district court's waiver ruling, this Court rejected the notion that participating in "one Rules-mandated meeting" is enough to amount to a substantial invocation of "the litigation machinery." *Pinnacle Constructors Grp.*, 2024 WL 3042536, at *2.[3]

Not surprisingly, then, Experian's limited participation here does not come close to any of the cases where this Court has found that a party "acted inconsistently with the arbitration right." *Garcia*, 699 F.3d at 1277. Although the "totality of the circumstances" is necessarily "based on the facts of each case," *Warrington*, 2023 WL 1818920, at *2, this Court has generally found that a party "acted inconsistently with the arbitration right" in a given case

---

[3] The district court's contrary analysis relied heavily on Florida state court precedent, applying Florida law. *See* Doc. 34 (Order) at 19-22. But because waiver "is controlled solely by federal law," *S & H Contractors*, 906 F.2d at 1514, that reliance was misguided. *See supra* Part II.B.1.

based on three types of conduct: (1) filing a substantive motion asking the court to resolve the case on the merits; (2) engaging in substantial discovery; or (3) affirmatively disclaiming an intent to arbitrate the dispute. Experian did none of those things here.

*First*, Experian did not file any substantive motion in the district court. As this Court has explained, filing a motion to dismiss on merits grounds, without mentioning arbitration, can represent "a substantial invocation of the litigation process" because it seeks "to resolve the parties' entire dispute on the merits." *Davis v. White*, 795 F. App'x 764, 769-70 (11th Cir. 2020) (per curiam). So when a party files such a motion—at least without also referring to arbitration or moving to compel simultaneously—and then "chang[es] course mid-journey" by seeking arbitration after failing to secure dismissal, courts can find that fair notice is lacking. *E.g.*, *Warrington*, 2023 WL 1818920, at *2 (finding waiver based partly on party filing a motion to dismiss, abate, stay, or remand); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011) (finding waiver based partly on "significant motions practice," though that waiver was later nullified). Nothing like that occurred here; the motion to compel was Experian's first substantive motion.

40

*Second*, Experian did not engage in substantial discovery. Experian did not serve any discovery on Lamonaco or any third party. It responded to Lamonaco's first set of interrogatories solely by invoking its arbitration right. This pattern of behavior is again worlds apart from the circumstances in which this Court has held that a party's participation in discovery evinces waiver. *See Garcia*, 699 F.3d at 1277-78 (party acted inconsistently with right to arbitrate in part because it served and answered interrogatories, produced nearly one million pages of documents, and took over fifteen depositions); *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1544 (11th Cir. 1990) (per curiam) (finding waiver where defendant "engaged in discovery typical of a party preparing for trial" over course of twenty months, including deposing the plaintiff and responding to a request for production).

*Finally*, Experian did not affirmatively disclaim arbitration. It never "told the district court" that "it declined to elect to arbitrate the dispute[]," *Garcia*, 699 F.3d at 1276-77, or indicated "express opposition to arbitration," *Krinsk*, 654 F.3d at 1201-02. Similarly, Experian never told Lamonaco that it opposed arbitration, either before or after she sued. *Cf. E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 551 F.2d 1026, 1040-41 (5th Cir. 1977) (finding waiver because a party stated pre-suit that it opposed arbitration).

41

In sum, the actions Experian *did* take amounted merely to "orderly participation in the lawsuit," which is not "inconsistent[] with the arbitration right." *Garcia*, 699 F.3d at 1277. And Experian did *not* take any of the actions this or other Courts of Appeals have found rise to the level of "substantially invok[ing] the litigation machinery." *Id.* The district court therefore legally erred in holding that Experian waived its right to arbitrate.

## <u>CONCLUSION</u>

For these reasons, the Court should reverse the denial of Experian's motion to compel arbitration and remand with instructions to grant it.

Dated: July 3, 2024

Respectfully submitted,

*/s/ Jacob (Yaakov) M. Roth*
Jacob (Yaakov) M. Roth
Jeffrey R. Johnson
Brett J. Wierenga
Emily M. Hall
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939
yroth@jonesday.com

*Counsel for Appellant Experian Information Solutions, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 9,389 words, not counting the parts of the brief excluded by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Book Antiqua font.

Dated:  July 3, 2024

*/s/ Jacob (Yaakov) M. Roth*
Jacob (Yaakov) M. Roth
JONES DAY

*Counsel for Appellant Experian*
*Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2024, I electronically filed the foregoing Opening Brief for Defendant-Appellant Experian Information Solutions, Inc., using the Court's Appellate ECF system, which will automatically send notification to counsel of record.

Dated:  July 3, 2024

<u>*/s/ Jacob (Yaakov) M. Roth*</u>
Jacob (Yaakov) M. Roth
JONES DAY

*Counsel for Appellant Experian*
*Information Solutions, Inc.*

44